GLADYS M. HARGIS *et al.* v. W. C. ROBINSON *et al.*
No. 13,874. (79 Pac. 119.)

### SYLLABUS BY THE COURT.

1. EQUITY — *Intervention after Reversal — Restitution and Distribution of Fund.* After the reversal of a judgment in an equitable proceeding the supreme court ordered the fund which was the subject of the controversy to be returned to the prevailing party. When the order of restitution was sent down the district court permitted a stranger to the suit to intervene and show that the prevailing party had transferred to him a portion of the fund during the progress of the litigation, and thereupon ordered the payment of the same to him. *Held,* not error.

2. PRACTICE, DISTRICT COURT — *Dismissal with Prejudice.* An order of the court dismissing a case "with prejudice," made on motion of plaintiff, is a final disposition of the controversy, and unless it be set aside or reversed it will be a bar to a future action.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed January 7, 1905. Affirmed.

*J. E. Torrance,* and *S. C. Bloss,* for plaintiffs in error.
*Hackney & Lafferty,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding involves the question whether, after the supreme court has made an order directing the restoration or payment of a fund to one of two litigating parties, a third may intervene and show that the first has transferred his right to a part of the fund, and that the third party is entitled to such part. The question arises on the following facts, which are more fully set forth in *Hargis v. Robinson,* 63 Kan. 686, 66 Pac. 998:

Meredith owned a tract of land, and in 1884 gave a mortgage thereon for $800. In 1886 a judgment for

$270 was obtained against the Merediths which became a lien on the land inferior to the mortgage lien. In 1887 Meredith sold the premises to M. L. Robinson and M. L. Read. In 1889 Read and the representatives of Robinson paid off the $800 mortgage, which left the judgment standing as a first lien against the land. In 1893 an execution was issued on the judgment which was levied on the land, and it was subsequently sold to Gladys M. Hargis for $1200. In 1894, Robinson and Read both having died, their executors commenced a suit in the district court, asking to be subrogated to the rights of the mortgagee under the $800 mortgage which had been previously paid, and also to have their title quieted as against the sheriff's deed to Hargis. In 1898 judgment was rendered, restoring the mortgage lien and foreclosing the same, under which the land was sold for $1319.57 to a stranger to the record. Hargis brought the case to this court, and in December, 1901, the judgment of the trial court restoring and foreclosing the mortgage was reversed, it being held that the executors of Robinson and Read were not entitled to subrogation as against Hargis. (*Hargis v. Robinson, supra.*)

Afterward, and on a motion for restitution, it was made to appear that the land which had been the subject of controversy had been sold to a stranger, and this court made an order that the executors of Robinson and Read pay to Hargis $1319.57, or restore the land in controversy. When the mandate of the court upon the order of restitution was sent down judgment was entered in favor of Hargis against the executors for the sum mentioned, but it appearing that it was done without notice to the opposing party it was set aside. Subsequently one-half the amount named in the order of restitution, to wit, $775.20, was paid to

the clerk of the court, and W. C. Robinson, one of the executors, intervened in his individual capacity, alleging that in October, 1895, Gladys M. Hargis and her husband conveyed an undivided half of the land in controversy to A. P. Johnson, who filed the deed for record March 4, 1897; that in February, 1898, Johnson sold the half-interest in the land to Robinson in his individual capacity, and, as the deed then executed was lost, a later deed, executed in January, 1902, was delivered to Robinson, conveying to him the undivided half of the real estate.  Robinson, therefore, asked that one-half of the fund be paid to him, instead of to Hargis.  Gladys M. Hargis and her husband alleged that they had made a deed to Johnson, but that it was in fact a mortgage to secure the payment of indebtedness to him.  They also set up that Robinson was not entitled to intervene at that stage of the proceedings, and, further, that by reason of his representative capacity as trustee of the Robinson estate he was estopped from asserting any title, in his individual capacity, to the land or fund.  Robinson replied that the Hargises could not question the character of the conveyance from Johnson to Robinson because in an action brought by them to have the deed declared to be a mortgage it had been finally determined adversely to their contention; that is, the action had been dismissed by the court with prejudice to the bringing of another action.  A hearing was had upon these issues and the court determined that W. C. Robinson was entitled to one-half of the fund, and gave judgment accordingly.

This was an equitable proceeding, and the court rightly allowed intervention by W. C. Robinson, who had not been connected with the litigation in his individual capacity.  Ordinarily, a stranger to litigation

who has an interest in a fund in controversy, or which is in the custody of the court, may intervene and assert a title to all, or a portion, of such fund. It is contended that under the order and judgment of this court the district court was without authority to do anything but enforce the payment of the fund to the Hargises, and this regardless of whether they, or others, were then entitled to the fund. Where the direction in a mandate of the reviewing court is specific and final ordinarily the trial court must carry it into effect. However, a blind, technical and literal compliance with the mandate, without regard to new facts or to justice and equity, is not required. (*Kansas Pacific Rly. Co. v. Amrine, Treasurer, &c.*, 10 Kan. 318; *Conroy v. Perry*, 26 id. 472; *Duffitt & Ramsey v. Crozier, Judge*, 30 id. 150, 1 Pac. 69; *McDonald v. Swisher*, 60 id. 610, 57 Pac. 507.) Of course, old facts are not to be reconsidered, nor adjudicated issues retried, but if new facts are presented and new rights have arisen a further inquiry and adjudication thereon may be had.

There was no attempt here to reopen the case or to retry any of the questions settled in that adjudication. It had been determined that the estates of Robinson and Read were not entitled to subrogation; that Mrs. Hargis, by reason of her purchase at the execution sale, and because the land had been sold under the erroneous decree of foreclosure, was entitled to the money derived from the sale. This was the decision as between the litigating parties, but there was no determination as to whether she had transferred or surrendered her right to the land or fund while the litigation was in progress. If she had already received payment of a part of the fund she could not insist upon an interpretation of the mandate of this court

which would require it to be paid over again, and if she had assigned the fund, or a portion of it, to another, surely such other could intervene and show the assignment and his right thereunder to a portion of the fund.   Here the Hargises had transferred their interest in the land or fund to Johnson, who had re-transferred to Robinson, and no reason is seen why Robinson could not intervene at the time of the distribution and claim the share of the fund which the Hargises had actually transferred.   While Robinson's intervention was after judgment and review, its purpose was not to interrupt the litigation between the original parties or to retry the issues joined between them.   It did not retard the original suit nor require the setting aside of the judgment rendered in it.   It is based on a new right which arose after the litigation was begun, and upon an assignment and transfer which the Hargises themselves made.   Intervention after judgment in an equitable proceeding is not uncommon, and especially where there is a fund for distribution.

Complaint is made of the ruling respecting the transfer of the land and because the plaintiffs in error were not permitted to show that the deed to Johnson was in fact a mortgage.   Robinson contended, and the court held, that the Hargises were concluded by the litigation between them and Johnson on that issue. That action was brought in March, 1897, and concluded in December, 1899.   After pending that length of time the plaintiffs by their attorneys, one of whom was Hargis himself, moved the court to dismiss the case "with prejudice" and at plaintiffs' costs, and the court granted the motion and formally granted the dismissal "with prejudice."   No objection was made to the entry, nor was its finality questioned by any

one until the matter of the distribution of the fund in question arose. The contention now is that the dismissal "with prejudice," at the instance of the plaintiffs' attorneys, was not effective ; that it was in the nature of a common-law *retraxit*, which cannot be entered by an attorney, but must be made by the plaintiff in person. Provision having been made by statute, the common-law rule invoked does not apply.

Under our code and practice two methods of dismissal are provided—one is a dismissal "without prejudice" to a future action, for various reasons, and the other a dismissal "with prejudice" to a future action. Where a party voluntarily dismisses a case and wishes to reserve to himself the privilege of enforcing his right in a subsequent proceeding he should procure, and have entered, an order of dismissal, stating in express terms that it is "without prejudice." An order dismissing "with prejudice" is equivalent to an adjudication upon the merits, and it will operate as a bar to a future action. The terms "with prejudice" and "without prejudice" have been recognized by the legislature and by the decisions of this court as having reference to, and being determinative of, the right to the bringing of a future action. (Civil Code, § 398, Gen. Stat. 1901, § 4846 ; *St. Joe & D. C. Rld. Co. v. Dryden*, 17 Kan. 278 ; *Brown v. Kirkbride*, 19 id. 588 ; *Allen v. Dodson, Sheriff*, 39 id. 220, 17 Pac. 667 ; *Banking Co. v. Ball*, 57 id. 812, 48 Pac. 137 ; *Railway Co. v. McWherter*, 59 id. 345, 53 Pac. 135.) A dismissal under our practice differs from some of those suggested by plaintiffs in error in this, that it is a judicial act rather than the act of the party. Whether "with prejudice" or "without prejudice" it is in the nature of a judgment; and a judgment "with prejudice," not set aside or reversed, is

a final disposition of the controversy.   (*Allen v. Dodson, Sheriff, supra; Banking Co. v. Ball, supra.*)

The relations between Robinson and the estates represented by him are not in controversy here, and if the purchase of the land, or of an interest in the fund, by Robinson was an abuse of his trust, as plaintiffs in error contend, it does not injuriously affect them, and is not a matter of which they may complain.

The judgment of the district court is affirmed.

All the Justices concurring.